FILED
2021 Mar-10  AM 11:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **MELANIE JOYE MOORE HARRISON,** | } } } | |
| **Plaintiff,** | } } | |
| | } | **Case No.:  19-CV-01466-MHH** |
| **v.** | } } | |
| **ANDREW SAUL, Commissioner of the Social Security Administration,**[1] | } } } } | |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION</u>

Pursuant to 42 U.S.C. § 405(g), plaintiff Melanie Joye Moore Harrison seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied her claims for disability insurance benefits.  After careful review, the Court affirms the Commissioner's decision.

---

[1] The Court asks the Clerk to please substitute Andrew Saul for Nancy A. Berryhill as the defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 25(d) (When a public officer ceases holding office, that "officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## I.  PROCEDURAL HISTORY

Ms. Harrison applied for disability insurance benefits.  (Doc. 5-3, p. 35).  She alleges that her disability began on September 4, 2013.  (Doc. 5-3, p. 35).  The Commissioner initially denied Ms. Harrison's claims.  (Doc. 5-3, p. 35).

Ms. Harrison requested a hearing before an Administrative Law Judge ("ALJ").  (Doc. 5-3, p. 35).  After the hearing, the ALJ issued an unfavorable decision.  (Doc. 5-3, pp. 35–51).  The Appeals Council declined Ms. Harrison's request for review, making the Commissioner's decision final for this Court's judicial review.  (Doc. 5-3, p. 2).  *See* 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," a district court "review[s] the ALJ's 'factual findings with deference' and his 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510–11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

A district court must determine whether there is substantial evidence in the record to support the ALJ's findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In making this evaluation, a district court may not "decide the facts

anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).   If the ALJ's decision is supported by substantial evidence, then a district court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, a district court must determine whether the ALJ applied the correct legal standards.  If a district court finds an error in the ALJ's application of the law, or if a district court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then a district court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant

can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Harrison has not engaged in substantial gainful activity since September 4, 2013, the alleged onset date. (Doc. 5-3, p. 37). The ALJ determined that Ms. Harrison suffers from the following severe impairments: posttraumatic stress disorder (PTSD), depressive disorder, and anxiety disorder. (Doc. 5-3, p. 37). The ALJ determined that Ms. Harrison suffers from the following non-severe impairments: hypertension and obesity. (Doc. 5-3, p. 37). Based on a review of the medical evidence, the ALJ concluded that Ms. Harrison does not have an impairment or a combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 5-3, p. 38).

In light of Ms. Harrison's impairments, the ALJ evaluated her residual functional capacity. The ALJ determined that Ms. Harrison had the RFC to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple routine tasks and be provided short simple instructions; can perform work that does not involve quick decision making, rapid changes, and multiple demands; work in close proximity to others (i.e., separate workstation); no interaction with the general public; can work with a few familiar coworkers and have occasional, casual interaction with them but will primarily work with things and not people; will need supportive and nonconfrontational feedback; will have infrequent workplace changes that would be introduced gradually; will need breaks every two hours; and will miss one to two days of work per month.

4

(Doc. 5-3, pp. 39–40).

Based on this RFC, the ALJ concluded that Ms. Harrison could not perform her past relevant work as an adult education teacher or educational supervisor at a correctional institution.  (Doc. 5-3, p. 49).  The ALJ noted that Ms. Harrison was 45 years old when she applied for disability benefits.  A person who is that age "is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563)."  (Doc. 5-3, p. 49).  Relying on testimony from a vocational expert, the ALJ found that other jobs existed in the national economy that Ms. Harrison could have performed, including hand packager, warehouse worker, and office helper.  (Doc. 5-3, p. 50). Accordingly, the ALJ determined that Ms. Harrison was not under a disability within the meaning of the Social Security Act at any time from September 4, 2013, the alleged onset date, through October 31, 2018, the date of the ALJ's decision.  (Doc. 5-3, p. 50).

## IV. ANALYSIS

Ms. Harrison contends that she is entitled to relief from the ALJ's decision for four reasons: the ALJ failed to assign proper weight to Ms. Harrison's treating psychiatrist's findings; the Appeals Council erroneously determined that new evidence Ms. Harrison submitted would not show a reasonable probability that the evidence would change the outcome of the decision; the ALJ's decision was not based on substantial evidence when the evidence submitted to the Appeals Council

is considered; and the ALJ used an improper pain standard and failed to consider all of Ms. Harrison's severe impairments.  (Doc. 7, p. 2).  The Court addresses each argument in turn.

### A. Weight Given to Treating Psychiatrist

Ms. Harrison, in a conclusory manner, asserts that the ALJ did not afford sufficient weight to determinations made by her treating psychiatrist, Dr. Shankar Yalamanchili.  (Doc. 7, p. 70).  Ms. Harrison was diagnosed with PTSD and depression after suffering from traumatic experiences in her workplace.  (Doc. 5-9, p. 44; Doc. 5-11, p. 4; Doc. 5-12, pp. 1–2).  In a letter dated September 5, 2014, Dr. Yalamanchili explained to the Federal Office of Worker's Comp Programs that Ms. Harrison suffers from PTSD and Major Depressive Disorder, and as a result of these illnesses, Dr. Yalamanchili concluded that Ms. Harrison was unable to work, despite Ms. Harrison having tried various medications and therapies.  (Doc. 5-4, p. 7).  Dr. Yalamanchili repeated his findings in a letter dated March 30, 2017, in which he stated that Ms. Harrison has anxiety dealing with crowds and is in an "ongoing depressive and anxious state," making her unable to work in his opinion.  (Doc. 5-4, p. 4).   The ALJ assigned little weight to these conclusions because Dr. Yalamanchili's opinions were inconsistent with Ms. Harrison's ongoing treatment records.  (Doc. 5-3, pp. 46–47).

In her brief, Ms. Harrison quotes portions of Dr. Yalamanchili's letters and provides case law from various cases from the Eleventh Circuit regarding the weight a treating psychiatrist's findings and opinions should be given. (Doc. 7, pp. 70–82). However, Ms. Harrison does not point to a specific error that the ALJ made in considering—or failing to consider—Dr. Yalamanchili's opinions. The Court is left to speculate about how Ms. Harrison believes the ALJ improperly weighed these letters in comparison to the remainder of the evidentiary record. "This sort of perfunctory argument gives neither the Commissioner nor the court any guidance about [Plaintiff's] argument aside from the fact that she asserts the existence of an error." *Morgan v. Soc. Sec. Admin., Comm'r*, No. 4:17-CV-01148-ACA, 2019 WL 1466259, at *3 (N.D. Ala. Apr. 3, 2019) (citing *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009)). Consequently, Ms. Harrison has not provided an adequate argument to support her conclusion that the ALJ erred in her case.

The Court has reviewed Ms. Harrison's medical records and finds that substantial evidence supports the ALJ's decision to assign little weight to Dr. Yalamanchili's assessment. Though Dr. Yalamanchili was Ms. Harrison's treating psychiatrist, the ALJ concluded that his opinions are inconsistent with other records indicating that Ms. Harrison had much higher functioning ability. Substantial evidence supports this conclusion.

Generally, "the medical opinion of a specialist about medical issues related to his or her area of specialty [is due more weight] than . . . the medical opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(c)(5).  And "[a]bsent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'"  *Winschel*, 631 F.3d at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  When an ALJ does not give a treating physician's opinion considerable weight, an ALJ must clearly articulate the reasons for her decision.  *Winschel*, 631 F.3d at 1179.  Good cause exists when:

> (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.

*Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *Lustgarten v. Comm'r of Soc. Sec.*, No. 17-14763, 2019 WL 6048534, at *2 (11th Cir. Nov. 15, 2019) (quoting *Phillips* for good cause framework).

Ms. Harrison's medical records show that after the traumatic events at her workplace, Ms. Harrison began seeing Dr. Yalamanchili and Dr. Kelly Kaplan, a counselor.  Dr. Yalamanchili prescribed several medications to help Ms. Harrison sleep and to control her anxiety.  (Doc. 5-4, p. 17; Doc. 5-9, pp. 26, 28–37).  Ms. Harrison engaged in talk therapy with Dr. Kaplan on a weekly or biweekly basis. (Doc. 5-4, p. 19).  In one session with Dr. Kaplan in 2013, Ms. Harrison said that she was taken out of work by Dr. Yalamanchili due to trauma she experienced and

that she had applied for a new position at Homeland Security.  (Doc. 5-10, p. 12).

In the same session, Ms. Harrison explained that she "feels ok in crowds, but gets

panicky if she is left alone."  (Doc. 5-10, p. 12).  Her plan to overcome her fear of

crowds was to shop at small local stores when they were not crowded.  (Doc. 5-10,

p. 12).  Throughout her medical records, Ms. Harrison maintained that she has

anxiety in crowds and in public when she does not recognize individuals. (Doc. 5-8,

p. 12; Doc. 5-9, p. 26, 28; Doc. 5-10, p. 40).  In many of the therapy sessions, Dr.

Kaplan noted Ms. Harrison was well-oriented and maintained direct eye contact.

(Doc. 5-10, pp. 12, 42–44, 47; Doc. 5-12, pp. 5–7).

While Dr. Yalamanchili and Dr. Kaplan were treating Ms. Harrison, she

experienced several traumatic personal events, which increased her symptoms.

After her father passed away, Ms. Harrison experienced a "normal grief reaction" to

cleaning out her childhood home and increased grief from remembering him around

holidays and special events.  (Doc. 5-12, p. 95–96; Doc. 5-15, p. 64, 69, 77, 79).  In

2016, Ms. Harrison experienced increased anxiety and grief as her elderly mother's

health declined, and Ms. Harrison's dog was diagnosed with health problems. (Doc.

5-12, p. 42, 48–49, 64, 67).

Over time, Ms. Harrison, despite experiencing symptoms of anxiety, reported to

Dr. Kaplan that she was better able to manage her anxiety.  With the help of

medication, Ms. Harrison was able to attend a Louisiana State University football

game without experiencing panic attacks.  (Doc. 5-10, p. 9).  Ms. Harrison went on several trips to Louisiana to see family and often saw her grandchildren.  (Doc. 5-5, pp. 5–6; Doc. 5-10, pp. 6, 9; Doc. 5-12, pp. 16, 62, 93; Doc. 5-13, p. 54).  In 2018, Ms. Harrison was able to start and run a small business making dog treats.  (Doc. 5-3, p. 63; Doc. 5-13, p. 50).  The work that she did in the dog treat business helped distract her from her anxiety.  (Doc. 5-13, p. 50).  Ms. Harrison explained that she recognizes when situations may stress her, and she is able to remove herself from the situation and often self-soothe to avoid having a panic attack and to maintain a positive outlook on life.  (Doc. 5-3, p. 22; Doc. 5-12, p. 5; Doc. 5-13, p. 43).  In a visit with her physician for an unrelated illness, Ms. Harrison demonstrated an appropriate mood and affect, and she denied anxiety, panic attacks, depression, hallucinations, or paranoia.  (Doc. 5-10, p. 59, 60, 63, 77).  While Ms. Harrison did show signs of improvement, Dr. Kaplan acknowledged that Ms. Harrison will likely need to continue medications and therapy during particularly stressful periods of her life.  (Doc.  5-9, p. 6; Doc. 5-13, p. 44).  Dr. Yalamanchili changed Ms. Harrison's prescriptions and dosages over several visits because he believed some of her past medications were not helping her.  (Doc. 5-13, p. 38).  But, Dr. Yalamanchili noted that Ms. Harrison maintained a congruent affect with a logical and goal directed thought process, so he did not change Ms. Harrison's medications during a visit on June 27, 2018. (Doc. 5-13, pp. 38–41).

Ms. Harrison testified in a hearing with the ALJ on July 31, 2018. (Doc. 5-4).  In this hearing, Ms. Harrison explained that her mood was like a "roller coaster ride" with some days being harder than others.  (Doc. 5-4, p. 17).  She said she had difficulty remembering things, and she has to write herself notes to remember various tasks.  (Doc. 5-4, p. 17).  Ms. Harrison asserted that she could no longer use the computer and that she once was social, but she was not anymore.  (Doc. 5-4, pp. 17, 19).

In her opinion, the ALJ described Ms. Harrison's medical records and testimony in detail.  (Doc. 5-3, pp. 40–48).  After recounting various findings regarding Ms. Harrison's anxiety and the way in which her diagnosis impacted her daily living, the ALJ determined that Ms. Harrison did have heighted symptoms during periods of extreme situational stressors, but she was able to accommodate those symptoms through yoga, therapy, and medications.  (Doc. 5-3, p. 47).  Noting that Ms. Harrison could go out in public alone and open a small business, the ALJ concluded that Dr. Yalamanchili's determination that she was unable to work was inconsistent with substantial evidence in the record which showed that Ms. Harrison was not severely limited by her impairments.  (Doc. 5-3, p. 47).  The record supports this finding.   Accordingly, the ALJ had good cause to determine that Dr. Yalamanchili's opinions about Ms. Harrison's ability to work should be given little weight.

### B. New Evidence Submitted to the Appeals Council

Ms. Harrison argues that the Appeals Council erred in failing to consider additional evidence she had submitted after the ALJ had issued her opinion. (Doc. 7, p. 82). Ms. Harrison submitted to the Appeals Council additional treatment records from Dr. Kaplan and Dr. Yalamanchili and treatment notes from Advanced Imaging regarding findings that Ms. Harrison may have a spinal abnormality. (Doc. 5-3, p. 3).

Generally, at each stage of the administrative process, a claimant may introduce new evidence to support her claim. *See* 20 C.F.R. § 404.900(b); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council "must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F. 3d at 1261 (quoting 20 C.F.R. § 404.970(b)). If the Appeals Council erroneously fails to consider new evidence, a district court must remand. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

Evidence must be both material and timely to be considered by the Appeals Council. "Evidence is chronologically relevant if it 'relates to the period on or before the date' of the ALJ's decision." *Banks v. Comm'r, Soc. Sec. Admin.*, 686 Fed. Appx. 706, 709 (11th Cir. 2017) (quoting 20 C.F.R. § 416.1476(b)(1)). "Even records that

postdate the ALJ's decision may be chronologically relevant when the records assess conditions existing prior to the decision, the physician evaluated medical records from before the ALJ's decision, and there is no evidence of deterioration." *Blackwell v. Saul*, 2020 WL 5203992, *5 (N.D. Ala. Sept. 1, 2020) (citing *Washington*, 806 F.3d at 1322); *see also Ring v. Soc. Sec. Admin., Comm'r*, 728 Fed. Appx. 966, 968 (11th Cir. 2018). Additionally, evidence is "material, and thus warrants a remand, if there is a reasonable possibility that the new evidence would change the administrative outcome." *Flowers v. Comm'r of Soc. Sec.*, 441 Fed. Appx. 735, 745 (11th Cir. 2011). If additional evidence is either immaterial or untimely, the Appeals Council may deny review and is not required to explain its decision to deny. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014).

Ms. Harrison submitted to the Appeals Council various medical records as new evidence. She submitted several medical records from her visits with Dr. Yalamanchili dated June 10, 2018 to October 11, 2018; therapy notes from Dr. Kaplan dated August 15, 2018 to October 24, 2018; and a medical record from Advanced Imaging dated February 7, 2017. (Doc. 5-3, p. 3). Ms. Harrison also resubmitted the 2014 and 2017 letters from Dr. Yalamanchili. (Doc. 5-3, p. 3). After accepting this new evidence, the Appeals Council denied review because that "evidence does not show a reasonable probability that it would change the outcome of the decision," and some evidence was untimely. (Doc. 5-3, p. 3).

The medical records through October 24, 2018 are timely because they predate the ALJ's decision, (Doc. 4-3, pp. 33, 36–38), but, Dr. Kaplan's note from January 2019 and the related medical records from her office from November 14, 2018 to March 13, 2019 postdate the ALJ's decision, and these records do not show that Dr. Kaplan evaluated medical records created before the ALJ's decision or that Ms. Harrison described her mental health symptoms existing during the relevant time period. *Blackwell*, 2020 WL 5203992 at *5–6 (citing *Ring v. Soc. Sec. Admin.*, Comm'r, 728 Fed. Appx. 966, 968 (11th Cir. 2018)). These records are untimely to Ms. Harrison's case. (Doc. 5-3, p. 15, 21–31).

The timely records are not material because there is not a reasonable probability that this evidence would change the ALJ's determination. Dr. Yalamanchili's 2014 and 2017 notes were considered by the ALJ because they were submitted for her original review. (Doc. 5-3, p. 46). The other treatment notes from Dr. Yalamanchili state that Ms. Harrison has reoccurring depression and PTSD, which makes her isolate and avoid crowds. (Doc. 5-3, pp. 78, 82). In these visits, Ms. Harrison had congruent mood and denied memory loss, hallucinations, paranoia, or manic symptoms. (Doc. 5-3, p. 79, 82). The additional therapy notes from Dr. Kaplan relate to Ms. Harrison's reaction to the death of her mother. (Doc. 5-3, pp. 56–65). Dr. Kaplan explained that Ms. Harrison experienced increased anxiety and depression as a result of situational stressors like a death in the family. (Doc. 5-3,

pp. 56, 58, 60).  These new records underscore that Ms. Harrison had depression and PTSD that caused her to suffer anxiety in certain circumstances, a point already established by other evidence in the record considered by the ALJ.  (Doc. 5-10, pp. 9, 43; Doc. 5-12, pp. 8, 22, 24, 44, 48: Doc. 5-13, p. 10).  These records therefore duplicate findings of records that the ALJ considered.

Additionally, the records from Advanced Imaging would not change the ALJ's determination.  Ms. Harrison submitted notes from an office visit with Dr. Robert Ryan dated February 7, 2017, that indicate that Ms. Harrison's spine had "mild disc space narrowing" and "mild broad-based annular disc bulge," but Dr. Ryan did not find disc herniation or stenosis.  (Doc. 5-4, p. 5).  Dr. Ryan's notes state: "multilevel spondylitic change with mild central stenosis at C5-6 and more moderate stenosis at C6-7.  Associated foraminal stenosis is seen at both these levels, more pronounced on the left at C6-7."  (Doc. 5-4, p. 6).  Besides pointing to these notes, Ms. Harrison does not explain how this record would likely change the ALJ's determination.  Ms. Harrison has never claimed that she had spinal pain, and there is no evidence in this record or any other record regarding the limiting effect of pain in this respect.

Because none of the new evidence submitted to the Appeals Council clarifies or provides more information about Ms. Harrison's diagnoses or symptoms, this

evidence is not likely to change the decision of the ALJ, and the Appeals Council properly denied review.

## C. Substantial Evidence

Ms. Harrison makes a related argument that if the Appeals Council were to consider the new evidence that she submitted, then substantial evidence in the record would not support the ALJ's determination.  (Doc. 7, p. 92).  Ms. Harrison also argues that if new the evidence were considered, the ALJ's description of Ms. Harrison's limitations in the hypothetical question posed to the vocational expert would not be accurate.  (Doc. 7, pp. 92–93).

At the fifth stage of the disability framework, the ALJ bears the burden of demonstrating that sufficient jobs exist in the national economy that a plaintiff can perform, given her residual functional capacity.  *Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999).  The ALJ can satisfy this burden by posing hypothetical questions that include the claimant's severe impairments to a vocational expert ("VE").  *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (holding that an ALJ may omit non-severe impairments in her hypothetical questions to the VE). The ALJ need not include in the hypothetical question elements or limitations that are not supported by the claimant's record.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

During the administrative hearing, the ALJ asked the vocational expert to consider:

> an individual of the claimant's age, education, and work experience with no exertional limitations. She will perform simple[,] routine tasks and be provided short[,] simple instructions. She will perform work which does not involve quick decision-making, rapid changes, or multiple demands. [S]he will not work in close proximity to others meaning a separate work station. She will never interact with the general public. She will work with a few familiar coworkers and have occasional[,] casual interaction with them. However, she will primarily work with things not people. She will have supportive and non-confrontational feedback. She will have infrequent workplace changes that would be introduced gradually. She will be provided a break every two hours. She will miss one to two days of work per month. Would this hypothetical individual be able to do the claimant's past work?

(Doc. 5-4, p. 22).

The VE determined that the individual would not be able to return to work as an educational supervisor at a correctional facility—Ms. Harrison's previous job— but would be capable several other jobs, including a packager, warehouse worker, or office helper. (Doc. 5-4, pp. 22–23). The ALJ followed up, asking:

> For hypothetical two will be the same as hypothetical one with the added limitation that the individual will be unable to perform at a consistent pace due to psychological problems meaning she will be off task more than 20% of the workday. Would that individual be able to do the claimant's past work?

(Doc. 5-4, p. 23). The VE responded that the limitation of being off task for 20% of an eight-hour work day would be disqualifying for any position. (Doc. 5-4, p. 23).

Ms. Harrison argues that the ALJ did not meet the burden of showing sufficient numbers of jobs available because the ALJ failed to pose to the vocational expert questions that encompass the full range of Ms. Harrison's impairments. Specifically, Ms. Harrison argues that ALJ did not sufficiently consider the VE's testimony that Ms. Harrison was unable to work due to spending 20% of the day off-task, which is proven by the evidence submitted to the Appeals Council.  (Doc. 7, pp. 92–93).

The ALJ properly included all of Ms. Harrison's limitations because the limitation that the individual would be off-task for 20% of the day is not shown by the evidence.  The evidence Ms. Harrison submitted to the Appeals Council does not illustrate such a limitation.  In fact, this new evidence actually supports the ALJ's conclusion that Ms. Harrison was not severely limited by her anxiety and depression throughout the day.  The new records indicate that Ms. Harrison's mother passed away while the ALJ was considering her claim.  (Doc. 5-3, p. 56).  Despite her grief, Ms. Harrison engaged well in therapy and related to Dr. Kaplan that she was capable of acting as an executor for her mother's estate, planning her mother's funeral with many family members and other people attending, going to a conference with her daughter, and maintaining her small business during these events.  (Doc. 5-3, pp. 56, 58, 60–61).  Ms. Harrison was able to attend a crowded gospel concert with her daughter without having a panic attack. (Doc. 5-3, p. 65).  Dr. Kaplan opined that

Ms. Harrison "appear[ed] to be managing her symptoms of anxiety and depression well" and "grieving her mother's death appropriately," and she explained that Ms. Harrison's "symptoms of PTSD and depression are currently stable on her medication regime." (Doc. 5-3, p. 61, 65). These records show that Ms. Harrison was capable of performing several tasks and responsibilities at once and managed her mental health symptoms despite extreme outside stressors. There is no record that indicates that Ms. Harrison would be limited for any significant portion of her day.

Indeed, none of Ms. Harrison's medical records indicates that she would be off-task during the day due to her anxiety and depression. The evidence shows that Ms. Harrison has increased anxiety in crowds and in response to external stressors like a death in the family, but there is no evidence that specifically speaks to whether Ms. Harrison could be distracted or off-task for a significant part of each day. The residual functional capacity that the ALJ selected isolated Ms. Harrison from work that would expose her to crowds. Accordingly, the ALJ included sufficient information regarding Ms. Harrison's severe impairments in her hypothetical questioning to the VE.

### D. Pain Standard

The Eleventh Circuit pain standard "applies when a disability claimant attempts to establish disability through his own testimony of pain or other subjective

symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Coley v. Comm'r, Soc. Sec. Admin.*, 771 Fed. Appx. 913, 918 (11th Cir. 2019). When relying upon subjective symptoms to establish disability, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged [symptoms]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed [symptoms]." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt*, 921 F.2d at 1223); *Chatham v. Comm'r, Soc. Sec. Admin.*, 746 Fed. Appx. 864, 868 (11th Cir. 2019) (citing *Wilson*). If the ALJ does not apply the three-part standard properly, then reversal is appropriate. *McLain v. Comm'r, Soc. Sec. Admin.*, 676 Fed. Appx. 935, 937 (11th Cir. 2017) (citing *Holt*).

A claimant's credible testimony coupled with medical evidence of an impairing condition "is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223*; see Gombash v. Comm'r, Soc. Sec. Admin.*, 566 Fed. Appx. 857, 859 (11th Cir. 2014) ("A claimant may establish that he has a disability 'through his own testimony of pain or other subjective symptoms.'") (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). If an ALJ rejects a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson,* 284 F.3d at 1225; *Coley*, 771 Fed. Appx. at 918. As a matter of law, the

Secretary must accept a claimant's testimony if the ALJ inadequately or improperly discredits the testimony. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Kalishek v. Comm'r, Soc. Sec. Admin.*, 470 Fed. Appx. 868, 871 (11th Cir. 2012) (citing *Cannon*); *see Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987) ("It is established in this circuit if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.").

When credibility is at issue, the provisions of Social Security Regulation 16-3p apply. SSR 16-3p provides:

> [W]e recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must explain the basis for findings relating to a claimant's description of symptoms:

> [I]t is not sufficient . . . to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough . . . simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and

supported by the evidence, and be clearly articulated so the individual
and any subsequent reviewer can assess how the adjudicator evaluated
the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *10. In evaluating a claimant's reported symptoms,

an ALJ must consider:

(i) [the claimant's] daily activities; (ii) [t]he location, duration,
frequency, and intensity of [the claimant's] pain or other symptoms;
(iii) [p]recipitating and aggravating factors; (iv) [t]he type, dosage,
effectiveness, and side effects of any medication [the claimant] take[s]
or ha[s] taken to alleviate . . . pain or other symptoms; (v) [t]reatment,
other than medication, [the claimant] receive[s] or ha[s] received for
relief of . . . pain or other symptoms; (vi) [a]ny measures [the claimant]
use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying
flat on your back, standing for 15 to 20 minutes every hour, sleeping on
a board, etc.); and (vii) [o]ther factors concerning [the claimant's]
functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Leiter v. Comm'r, Soc. Sec. Admin.*,

377 Fed. Appx. 944, 947 (11th Cir. 2010).   The ALJ then must compare the

claimant's statements to the other evidence in the record to determine if there are

inconsistencies or conflicts between the record and the statements.   20 C.F.R.

§404.1529(c)(4).

In her complaint and brief, Ms. Harrison does not explain how the ALJ erred

in applying the pain standard in her case.  Ms. Harrison seems to argue that the ALJ

improperly applied the pain standard by failing to consider whether her anxiety,

depression, and PTSD were so severe that the very nature of these impairments could

be expected to lead to her alleged psychiatric limitations under the third prong of the pain standard. (Doc. 7, pp. 93–101).

The ALJ applied the third prong of the pain standard correctly. In her opinion, the ALJ made findings regarding Ms. Harrison's functional capacity, including a finding that Ms. Harrison could work at all exertional levels but must work with only a few familiar coworkers and would need breaks every two hours. (Doc. 5-3, pp. 39–40). In making these findings, the ALJ considered all of Ms. Harrison's symptoms and recounted Ms. Harrison's testimony from the hearing that she was hypervigilant, unsocial, and anxious to the point where she often stayed home. (Doc. 5-3, p. 40).

The ALJ discounted Ms. Harrison's testimony concerning the limitations she experienced because the limitations she claimed were inconsistent with her doctors' medical findings. (Doc. 5-3, pp. 40–44). The ALJ cited various medical records that indicated that Ms. Harrison's PTSD seemed to stabilize with therapy and medication and that Ms. Harrison's anxiety appeared to improve as evidenced by Ms. Harrison's ability to shop by herself, go to football games or recitals, and travel. (Doc. 5-3, pp. 41–42). The ALJ also noted that Dr. Yalamanchili documented "conservative findings the claimant was engaged and cooperative, and had a depressed and anxious mood, congruent affect, logical and goal directed thought process, and intact memory." (Doc. 5-3, p. 43). The ALJ explained that Dr. Kaplan

reinforced these findings when she determined that Ms. Harrison had "minimal and stabilized depression and anxiety, demonstrated a positive outlook for life, could soothe herself and return to a more stable and improved demeanor, and appeared to be doing better accepting events that were out of her control."  (Doc. 5-3, p. 45).

After explaining various medical records that were inconsistent with Ms. Harrison's testimony, the ALJ stated that Ms. Harrison's PTSD, anxiety, and depression "could reasonably be expected to cause the alleged symptoms," but the medical records and other evidence were not consistent with Ms. Harrison's statements regarding the intensity, persistence, and limiting effects of her symptoms. (Doc. 5-3, p. 44).  On this record, substantial evidence supports the ALJ's decision to partially discredit Ms. Harrison's statements regarding the limitations that she attributed to her PTSD, anxiety, and depression.  *See Markuske v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 762, 767 (11th Cir. 2014) ("The objective medical evidence cited by the ALJ provided 'adequate reasons' for her decision to partially discredit Markuske's subjective complaints [of back, neck, elbow, and carpal tunnel syndrome pain].").  The ALJ did not ignore Ms. Harrison's complaints regarding her impairments; the ALJ weighed that information in arriving at Ms. Harrison's RFC. Therefore, the ALJ did not commit error in applying the pain standard.

## V. CONCLUSION

For the reasons discussed above, the Court affirms the Commissioner's decision.

**DONE** and **ORDERED** this March 10, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE